**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| WELLOGIX, INC., | § | |
| | § | |
| Plaintiff | § | |
| | § | CIVIL ACTION NO. 3:08-CV-119 |
| v. | § | |
| | § | JURY DEMANDED |
| ACCENTURE LLP, | § | |
| | § | |
| Defendant | § | |

**WELLOGIX'S SUPPLEMENTAL MOTION
FOR AWARD OF CONTINGENT ATTORNEYS' FEES**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Pursuant to Rule 54(d) of the Federal Rules of Civil Procedure, Plaintiff Wellogix, Inc. ("Wellogix") renews and supplements its previous motion to this Court for an award of its attorneys' fees against Defendant Accenture LLP ("Accenture") (Doc. 345), as follows:

## I.  INTRODUCTION

As the prevailing party on its theft of trade secrets claims in this matter, Wellogix seeks an award of its reasonable and necessary attorneys' fees as allowed by Chapter 134 of the Texas Civil Practice and Remedies Code.  *See* TEX. CIV. PRAC. & REM. CODE §134.005(b) ("Every person who prevails in a suit under this chapter shall be awarded court costs and reasonable and necessary attorney's fees.").

Wellogix seeks an award of attorneys' fees equal to the 45 percent contingent attorneys' fee to which it is contractually bound to its counsel in this matter, in light of the highly complex and protracted nature of this lawsuit, the risks endured by counsel for Wellogix, the outstanding results obtained, and the other factors this Court may properly consider in determining an appropriate fee.

## II.  FACTUAL &  PROCEDURAL BACKGROUND

In May 2008—more than six years ago—Wellogix filed its original petition in Texas state court.  Shortly thereafter, Accenture and the other co-defendants removed the case to this Court, where it was ultimately tried to a jury in May 2011.  In its complaint, Wellogix alleged, among other things, that Accenture was guilty of the theft of its trade secrets as described in the applicable provisions of the Texas Theft Liability Act, set forth in Chapter 134 of the Texas Civil Practice and Remedies Code.  Wellogix's lawsuit sought an award of reasonable and necessary attorneys' fees in connection with prosecution of its theft of trade secrets claims.  (Doc. No. 205)

After years of contentious and complex discovery and litigation, Wellogix's claims were ultimately tried to a twelve person jury, which returned a unanimous verdict against Accenture and in favor of Wellogix on all of its claims, awarding damages of more than $90 million.  (Doc. 298)  Accenture filed post-judgment motions challenging that verdict.  In October 2011, this Court issued a Memorandum and Order (Doc. 334) denying Accenture's Renewed Motion for Judgment as a Matter of Law (Doc. 311) and granting in part and denying in part Accenture's Motion for New Trial or Remittitur (Doc. 213).  The Court ordered Wellogix to elect between consenting either to a remittitur of $50 million of the jury's award of punitive damages or a new trial.  (Doc. 334)  Wellogix accepted the Court's suggested remittitur.  (Doc. 335)  The Court entered its Final Judgment (Doc. 338) on November 2, 2011 and its Amended Final Judgment on November 3, 2011 (Doc. 339).  The Court's Amended Final Judgment awarded Wellogix actual and exemplary damages and prejudgment interest, along with post-judgment interest compounded annually.  After the Fifth Circuit's mandate issued, Accenture paid Wellogix $49,050,653.23 as the amount owed for these damages and for pre- and post-judgment interest.

Accenture appealed this Court's final judgment (Doc. 340), and the parties briefed and argued this matter to the Fifth Circuit Court of Appeals.  That Court affirmed this Court's judgment in its entirety.  *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F. 3d 867 (5th Cir. 2013).  Accenture filed petitions for rehearing and for rehearing en banc, to which Wellogix responded, and which the Fifth Circuit denied without any judge dissenting or even asking for a poll.  Accenture then filed a petition for writ of certiorari in the Supreme Court of the United States, enlisting the aid of eight (8) separate *amici*.  Wellogix filed a brief in opposition to the petition for certiorari.  The Supreme Court denied Accenture's petition on June 9, 2014.  Wellogix is now indisputably the prevailing party in this matter.

While its appeal was pending, Accenture asked this Court to delay a determination of the reasonable and necessary attorneys' fees to be awarded to the prevailing party and admitted that calculating the *amount* of such fees would be the sole issue to be decided after the conclusion of the appeal.

> Accenture's appeal calls into question Wellogix's ability to recover on the statutory claim or on any other theory.  Until the appeal is resolved, *which party will prevail and thus be entitled to fees under section 134.005* is an open question, as is the secondary issue of the reasonable and necessary amount of attorneys' fees to which that party would be entitled.

(Doc. 361, p.3) (emphasis added)

Accenture's appeal—and its opportunity to "question Wellogix's ability to recover on the statutory claim or on any other theory"—is now "resolved," and it is time for this Court to determine the amount of the reasonable and necessary attorneys' fees to which Wellogix is entitled.  Wellogix is entitled to recover all of its reasonable and necessary attorneys' fees incurred in the lengthy and complex trial and appeal of this matter against Accenture, pursuant to the Texas statute on which its claims are based.

3

### III.  ARGUMENT & AUTHORITIES

The issue of whether Wellogix is entitled to its attorneys' fees on its statutory claim has been fully briefed to this Court by the parties, and those arguments will not be repeated here. (*See* Docs. 393, 394, 395, 396, and 397)

Wellogix is entitled to an award of attorneys' fees under Chapter 134 of the Texas Civil Practice and Remedies Code (the Texas Theft Liability Act), which authorizes awarding court costs and reasonable attorneys' fees to a prevailing party.  *See* §134.005(b).  Because Wellogix's claims in this diversity case are based on Texas law, Texas law controls the award of necessary attorneys' fees and the determination of the reasonableness of the amount of the fees awarded. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

### A.     A contingent fee award is permissible and reasonable here.

Wellogix seeks an award of attorneys' fees in the amount of $22,072,793.95, which amount is equal to the 45 percent contingent fee Wellogix is contractually obligated to pay (and did pay) from its recovery to its attorneys under the terms of its written fee agreement, given that this matter proceeded completely through the appellate process.  (*See* ¶10 of the Amended Declaration of Richard N. Laminack, attached as Exhibit "1")

Laminack, Pirtle & Martines ("LPM") agreed to represent Wellogix on a contingent fee basis because Wellogix did not have the ability to pay any attorneys' fees on an hourly basis, nor did it have the resources to pay reasonable and necessary litigation expenses as those expenses were incurred and came due during this litigation.  Pursuant to a written fee contract, LPM agreed to represent Wellogix in exchange for a contingent fee of 45 percent of any recovery obtained on its claims against Accenture, should such recovery be obtained during or after an appeal from a verdict.  (*See* ¶10 of Exhibit 1)  After trial, Wright & Close agreed to represent

Wellogix on appeal in exchange for a contingent fee of 5 percent of any recovery.  (*See* ¶9 of the Amended Declaration of Randall C. Owens, attached as Exhibit 2)

Because Wellogix's claims in this case are based on Texas law, this Court should consider the bases for awards of attorneys' fees set forth by Texas courts.  As noted by the Texas Supreme Court, contingent fee agreements are designed for exactly this situation: to allow plaintiffs who could not otherwise afford to hire and pay attorneys by the hour to still obtain legal counsel:

> Although contingent fee contracts are increasingly used by businesses and other sophisticated parties, their primary purpose is to allow plaintiffs who cannot afford an attorney to obtain legal services by compensating the attorney from the proceeds of any recovery.  The contingent fee offers "the potential of a greater fee than might be earned under an hourly billing method" in order to compensate the attorney for the risk that he or she will receive "no fee whatsoever if the case is lost."  In exchange, the client is largely protected from incurring a net financial loss in connection with the representation.  This risk-sharing feature creates an incentive for lawyers to work diligently and obtain the best results possible.  A closely related benefit is the contingent fee's tendency to reduce frivolous litigation by discouraging attorneys from presenting claims that have negative value or otherwise lack merit.

*Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 561 (Tex. 2006) (citations omitted).

A contingent fee in this case was the only option available to Wellogix given the financial devastation it suffered at Accenture's hands.  This is no longer simply an allegation – the fact that Accenture maliciously destroyed Wellogix's value was confirmed by the jury's verdict, by this Court's judgment, and by the Fifth Circuit's affirmance.  Accenture did not challenge the findings of malice or causation in its Supreme Court petition.  Accenture cannot be heard to say that it should not be saddled with paying the contingent fee Wellogix agreed to *because Accenture left Wellogix no other choice.*

The Texas Supreme Court recognizes that whether a fee is contingent on a recovery is a significant factor to be considered in awarding fees.  In *Arthur Andersen v. Perry Equipment Corporation*, 945 S.W.2d 812 (Tex. 1997), the Texas Supreme Court discussed the factors a factfinder should consider in determining the reasonableness of an attorneys' fees award.  That Court held that a factfinder "*should*" consider a party's contingent fee agreement, along with the other familiar factors bearing upon the reasonableness of a party's attorneys' fees (i.e., the same factors set out in *Johnson*).  *Id.* at 818–19.  *Id.*  The *Arthur Andersen* Court noted that proof of a contingent fee agreement, standing by itself, may be insufficient to support a contingent fee award by a jury, particularly where the jury cannot know the total amount of the judgment ultimately obtained by the party seeking its attorneys' fees.  *Id.*  The only caution that Court expressed about such fee awards was that courts should ask juries to determine an award in a specific dollar amount, rather than as simply a percentage of some unspecified future recovery amount.  *Id.* at 819.

Here, no such concerns are presented.  This Court is aware of the sums awarded against Accenture (and which were affirmed on appeal) and is aware of the specific dollar amount Wellogix is seeking in fees.  Moreover, this Court is presented with more than mere evidence of a contingent fee agreement upon which to base its fee award.  Having presided over this entire matter, this Court is intimately familiar with the evidence regarding the *Arthur Andersen* and *Johnson* factors commonly considered by Texas courts.  *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  The complexity of the facts and discovery necessary to prosecute the case, the extremely burdensome commitment of time, labor, and resources by Wellogix's counsel to this case over several years, the unusually expensive nature of the discovery in this case, and the fact that the matter was handled on a purely contingent fee basis

are well known to and may be considered by the Court in making its award of fees in this matter. *See also Jackson v. Host Int'l, Inc.*, 426 Fed. App'x. 216, 226, 28 (5th Cir. 2011) (unpublished). This Court is also entitled to take judicial notice of the proceedings before it.  *See* FED. R. EVID. 201.  This Court may also consider the declarations and exhibits attached hereto that bear upon those factors in support of Wellogix's request for attorneys' fees.

As this Court has seen firsthand, the trial and appeal of this case has required the commitment of an incredible amount of time and labor by Wellogix's counsel, and has involved complex and difficult legal issues, as well as similarly complex and difficult fact and expert discovery to prepare this matter for trial.  The risk to Wellogix's counsel in handling this matter on a purely contingent fee basis has been substantial, to say the least.  By way of example, Wellogix's counsel took out a loan of nearly $2.5 million simply to fund the costs of conducting this litigation, without any guarantee that such funds would ever be recouped, and is not surprisingly obligated to repay both the principal and interest on this loan.  Very few law firms would be willing, or even able, to take on such a risky proposition for several years.  Wellogix's counsel have carried the costs of this litigation from its inception.

Wellogix could not have sustained its claims through the discovery process and through Accenture's pretrial motion practice and briefing, or obtained the favorable results it achieved at trial, in the absence of great effort and skillful lawyering by its counsel—all without any guarantee of payment.  The same is certainly true for Wellogix's success at the post-trial stage of this matter and during the entire appellate process (including briefing, oral argument, rehearing motions, and petition for certiorari stages) before the Fifth Circuit and Supreme Court, given the quality of Accenture's existing counsel from Baker Botts and Accenture's decision to hire additional counsel from Sidley Austin, LLP.

The time and expense devoted to Wellogix's claims by its counsel foreclosed their ability to take on other significant employment during the pendency of this case. This Court is aware of the fees customarily charged in the Southern District for complex "bet-the-company" commercial litigation, as well as the amount of time and resources devoted to such cases and the comparable results obtained in this case.

This Court has also previously recognized and informed the parties of the likelihood that a contingent fee would be appropriate in the event Wellogix prevailed on appeal. The Court observed as follows, at a hearing in 2011:

> There are good arguments on both sides, but I am going to defer a decision on attorney's fees. I do think that if there is a plaintiff's judgment left at the end of the day, I do think that my starting point is going to be contingency. I think that's what's done in state courts, typically. I think these lawyers took a huge risk, and they're still experiencing risk because we don't know what the Fifth Circuit is going to do. So I think what I will do is start from the contingency that's in their contract and then make the adjustments as appropriate under the Fifth Circuit jurisprudence.

(Exhibit 3, p. 22)  The Court's prior observations remain entirely correct.

As the Texas Supreme Court observed, it is not at all unusual for an attorney in Texas to agree to represent a client in sophisticated commercial litigation in exchange for a contingent fee. *Hoover Slovacek LLP*, 206 S.W.3d at 561. Texas courts routinely uphold awards of attorneys' fees based on a contingent fee agreement where the party seeking fees presents evidence in support of the factors outlined in *Johnson* and *Arthur Andersen*. *See, e.g., In re Polybutylene Plumbing Litig.*, 23 S.W.3d 428, 439–40 (Tex. App.—Houston [1st Dist.] 2000, pet. dism'd); *Alsheikh v. Arabian Nat'l Shipping Corp.*, 2009 Tex. App. LEXIS 2227, at *13–14 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (mem. op.); *Main Place Custom Homes, Inc. v. Honaker*, 192 S.W.3d 604, 621–22 (Tex. App.—Fort Worth 2006, pet. denied); *EMC Mortgage Corp. v. Davis*,

8

167 S.W.3d 406, 418–19 (Tex. App.—Austin 2005, pet. denied); *Vingcard, A.S. v. Merrimac Hospitality Sys., Inc.*, 59 S.W.3d 847, 869–71 (Tex. App.—Forth Worth 2001, no pet.); *Transcon. Gas Pipeline Corp. v. Texaco, Inc.*, 35 S.W.3d 658, 675–76 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). The Fifth Circuit has likewise upheld contingent fee awards. *See In re ASARCO, L.L.C.*, 702 F.3d 250, 259 (5th Cir. 2012); *Alston v. Fleetwood Motor Homes of Ind., Inc.*, 480 F.3d 695, 703–04 (5th Cir. 2007) (upholding district court's decision to award contingent fee, but remanding for new calculation in light of reduced damages award); *Mathis v. Exxon Corp.*, 302 F.3d 448, 462 (5th Cir. 2002); *Klein v. O'Neal, Inc.*, 705 F. Supp 2d 632, 675–81 (N.D. Tex. 2010).

Wellogix's written agreement to pay its counsel a contingent fee of 45 percent of its recovery after an appeal is well within the usual and customary fees in this district. Given all of the foregoing, as well as the particular circumstances of this case, Wellogix seeks an award of reasonable and necessary attorneys' fees of $22,072,793.95, which amount represents 45 percent of its recovery in this matter. It bears noting that the jurors who heard the evidence in this case thought Accenture should be punished to the tune of $68 million. An award of $22 million in attorney's fees, even when added to the actual and punitive damages awards, will still be less than the jury's verdict in this matter.

### B.    A comparison to a lodestar amount of fees supports the reasonableness of the amount of contingent fees sought by Wellogix.

The amount of reasonable and necessary attorneys' fees to which Wellogix would be entitled under a "lodestar" calculation—multiplying the number of hours reasonably spent on the case by a reasonable hourly rate and adjusting that amount given the difficulty and complexity of this matter, the risks assumed by counsel, and the results obtained—further supports the conclusion that the amount of the contingent fees sought by Wellogix is appropriate.

9

Courts frequently adjust a lodestar amount of fees upward, based on the factors outlined in *Johnson* and *Arthur Andersen*. *Rutherford v. Harris County*, 197 F.3d 173, 192 (5th Cir. 1974); *Coe v. Chesapeake Exploration, LLC*, 2011 WL 4356728 (E.D. Tex. Sept. 15, 2011). Here, determining the lodestar amount of fees and applying an appropriate enhancement to that amount demonstrates, for comparison purposes, that the contingent fee sought by Wellogix is reasonable, necessary, and justified, for the reasons described below.

### 1. Reasonable hours

The Court's first step in a lodestar calculation is to determine the compensable hours listed in the attorneys' time records. *Coe*, 2011 WL 4356728, at *2. In support of its motion, Wellogix submits the amended declarations of its counsel and accompanying exhibits from LPM and Wright & Close, both of which document the hours spent prosecuting this case.

Wellogix's attorney in charge, Richard N. Laminack, has reviewed line-by-line all of LPM's attorney and staff hours which were recorded contemporaneously with these proceedings. During this review, Mr. Laminack deducted all attorney or non-attorney paralegal hours which were: (1) solely related to the prosecution of other defendants in this litigation; (2) solely related to Wellogix's misappropriation claims and (3) duplicative or related to extraneous matters. After thorough review and substantial deduction, LPM has determined that it spent 2984.75 attorney and non-attorney paralegal hours in this matter at the trial stage. (*See* ¶14–16 of Exhibit 1) This time and effort was reasonable and necessary to obtain Wellogix's recovery up through the pretrial and trial phases of this matter, as well as to assist appellate counsel in the post-trial and appellate phases of this matter.

Wellogix's appellate counsel with Wright & Close has performed a similar review of its contemporaneous time records. In addition to the time required to prepare and prosecute the trial

10

in this case, Accenture appealed from this Court's Amended Final Judgment in this matter, and Wellogix incurred additional substantial attorneys' fees in the post-trial and appellate process, responding to Accenture's thorough briefing, preparing and presenting oral argument, responding to Accenture's post-submission briefing, responding to Accenture's separate post-decision petitions for panel rehearing and for en banc rehearing, responding to Accenture's petition for writ of certiorari filed in the Supreme Court, as well as responding to Accenture's various filings in this Court regarding the recovery of attorneys' fees and its attempts to withhold payment of the amounts owed under judgment even after the Fifth Circuit issued its mandate.

As would be expected, the extent of Accenture's counsel's briefing and arguments at these various stages of the post-trial and appellate process required thorough and exacting legal representation by Wellogix's appellate counsel; representation which, on the merits, has been ultimately successful in all respects.  Based on the nature of the case, the legal issues raised by Accenture, and the sheer size of the record, Wright & Close's attorneys spent a total of approximately 2605 hours on this matter.  In his declaration, Randall C. Owens states that the time spent by Wright & Close's attorneys and paralegals could be reduced by 10 percent of the total time spent, prior to this Court's judgment, to account for tasks performed on matters solely related to Wellogix's common law claims for which fees are not recoverable.  (*See* ¶13–14 of Exhibit 2)  After this deduction, Wright & Close has determined that it spent approximately 2532 attorney and non-attorney paralegal hours on this matter.  (*Id.*)  This time and effort was reasonable and necessary to preserve Wellogix's recovery in the post-trial and appellate stages of this matter.  *Norris v. Hartmarx Specialty Stores, Inc.*, 913 F.2d 253, 257 (5th Cir. 1990).

Moreover, it is important to note that, in this case, Wellogix's common law and statutory claims both concerned the same trade secrets, the same actions by Accenture in wrongfully

11

taking and using Wellogix's trade secrets, and the same measure of damages.  As its claims were presented to the jury in the verdict form submitted by this Court at trial, Wellogix was required to prove for each claim: (i) that Wellogix possessed trade secrets; (ii) that Accenture obtained those trade secrets through improper means and without permission; and (iii) that Accenture's conduct proximately caused harm to Wellogix.  (Doc. 298)  The jury answered "Yes" to all liability questions, and awarded damages in a single question predicated on an affirmative answer to either theory of liability—a predication to which Accenture voiced no objection.

As this Court was able to observe throughout the litigation and trial of this matter, because of the similarity of proof required to demonstrate liability and damages, there was a great deal of overlap in the necessary pretrial litigation time and tasks necessary to pursue Wellogix's common law and statutory claims against Accenture.  The overwhelming majority of the time spent and tasks performed by Wellogix's counsel was for matters related to its statutory claims for theft of trade secrets or was directly relevant to these statutory claims.  However, in accordance with *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006), and as noted above, Wellogix's counsel have reviewed the attached Exhibits to determine whether it is possible to segregate out some portion of the time spent solely on Wellogix's non-statutory claims that does not also relate to Wellogix's statutory claims.  Each has made a reasonable good faith effort to comply with the segregation requirements of *Chapa* and to not include or seek fees related solely to Wellogix's common law claims for which fees are not recoverable.

Based on the information provided by LPM and Wright & Close, Wellogix's attorneys and their staff have spent a total of 5,516.75 hours pursuing this case.

## 2.        Reasonable hourly rate

Once the compensable amount of time is determined, a court's next step is to select an appropriate hourly rate based on the prevailing hourly rates for attorneys of similar experience in similar cases. *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795 (5th Cir. 2006); *Coe*, 2011 WL 4356728, at *2. When deciding the reasonableness of an attorney's hourly rate, the Court may consider factors that bear on the market rate and the hours reasonably spent. Some of these factors include the level of skill necessary, the time limitations, the amount at stake in the litigation, the attorneys' reputation, and the undesirability of the case.

Although they rarely bill clients by the hour, LPM attorneys Richard N. Laminack and Thomas W. Pirtle bill their time at an hourly rate of $800, and LPM attorney Buffy K. Martines bills her time at an hourly rate of $450, and these are reasonable hourly rates for each of them, respectively. In support of the appropriateness of these rates, Wellogix previously submitted the affidavit of William D. Sims, Jr., a partner and senior trial lawyer with Vinson and Elkins. (*See* Exhibits 1 and 4) According to Mr. Sims, who has spent 40 years litigating these types of cases, the hourly rates charged by attorneys for LPM are "fair and reasonable" and "well within the hourly rates normally seen for attorneys of their skill level and experience." (See Exhibit 4)

Similarly, the attorneys at Wright & Close bill their time based on the amount and years of experience of their respective attorneys. Mr. Wright has 34 years of experience in the practice of law. A reasonable rate for his time, given the factors discussed above, is $750 per hour; a reasonable rate for Mr. Hollenbeck and Mr. Owens is $500 per hour; a reasonable rate for the Wright & Close associates who worked on this matter is $350 per hour. These rates are in keeping with the typical of the usual and customary rates charged for attorneys' and paralegals' services in similar matters, are consistent with the hourly rates charged by practitioners of

comparable experience in cases involving theft and misappropriation of trade secrets filed in the Southern District of Texas, and were reasonable and necessary tasks in this matter.  (*See* ¶12 of Exhibit 2)  If anything, these rates are comparatively low, as shown below.  Were Mr. Owens and Mr. Hollenbeck employed by Sidley Austin or by Baker Botts, they would both bill their time at a rate of at least $750 per hour, given that they are 25- and 20-year attorneys, respectively.  In any event, Wellogix has not been able to pay its counsel *any* hourly attorneys' fees during this litigation, given its complete financial destruction by Accenture.

The hourly rates discussed in this motion and the attached exhibits are commonly charged for the type of complex litigation involved in this case, and in fact, this Court may take judicial notice of the fact that such hourly rates—and even substantially higher ones—have been proposed by and awarded to Accenture's counsel by courts in other cases.  For example, earlier this year in *In re Tribune Co.*, No. 08-13141 (Bankr. D. Del.), a federal bankruptcy court approved an hourly rate for Sidley Austin attorneys of $925 per hour.[1]  In 2012, in a similar matter, *In re Allied Systems Holdings, Inc.*, No 12-11564 (Bankr. D. Del.), Sidley Austin submitted a fee request to a federal bankruptcy court showing that the hourly rate for its attorneys with nine (9) years of experience is $725 per hour, while the hourly rate for a two-year associate is $500 per hour.[2]

This Court may also take judicial notice of the filings submitted to another court in this same district by Baker Botts in the *ASARCO, L.L.C.* case cited above.  *See* FED. R. EVID. 201. Excerpts from those filings and exhibits show that, in 2009, Baker Botts' partners billed at rates of as much as $800 per hour (with an increase to as high $900 in 2010), and that the hourly

---

[1]   *See* http://www.bloomberg.com/apps/news?pid=newsarchive&sid=a9IvitqCh_ZQ&refer=home
[2]   *See* http://courtreads.com/docket-419-application-for-compensation-of-sidley-austin-llp-for-the-period-of-june-19-2012-to-june-30-2012-filed-by-sidley-austin-llp-objections-due-by-9272012-attachments-1-notice-2-ex/

rates commonly charged by partners at other firms—also in 2009—ranged from $700 to $1,000 per hour.  (*See* Exhibit 5, p. 58 of 62; Exhibit 6, pp. 30–38 of 128; Exhibit 7, pp. 3–6 of 18)  The court in that matter ultimately approved a total fee for Baker Botts of more than $110 million. *See In re ASARCO, L.L.C.*, 702 F.3d 250, 259 (5th Cir. 2012).

Wellogix requested, but has not been provided with, information from Accenture regarding its counsel's hourly billing rates.  Given the rates charged by Accenture's counsel in other cases—and the high likelihood that its counsel is charging similar or higher rates in the present case—this Court should have no difficulty determining that the hourly rates at which Wellogix's counsel bill are similarly reasonable.

### 3.    Adjusting the "lodestar" amount

In certain circumstances, courts often apply a "multiplier" to adjust or enhance a lodestar fee award upward, based on the factors outlined in *Johnson* and *Arthur Andersen*.  The factors to be considered for enhancement include the following:

- the time and labor required to represent the client;
- the novelty and difficulty of the issues in the case;
- the skill required to perform the legal services properly;
- the preclusion of other employment by the attorney due to the acceptance of the case;
- the customary fee;
- whether the fee is fixed or contingent;
- time limitations imposed by the client or the circumstances;
- the amount involved and the results obtained;
- the experience, reputation, and abilities of the attorneys;
- the "undesirability" of the case;
- the nature and length of the professional relationship with the client; and
- the amount of awards in similar cases.

*Coe*, 2011 WL 4356728, at *6.  Many of these factors are applicable and support enhancement here.

As the Court itself noted on many occasions during the litigation of this case, the prosecution of Wellogix's claims in this matter required a massive commitment of time, labor, and resources, and was an extremely risky prospect given the costs involved and the length of time this matter has been pending.  Since its filing in May 2008, this lawsuit has required a substantial amount of attention from the three partners of LPM, as well as its non-lawyer staff members.  The amount of time and labor required to maintain the Wellogix case precluded LPM from taking any number of other similar commercial cases due its having to commit virtually all of its resources to this case.  This Court may also consider the fact that Wellogix's counsel agreed to representation in this matter on a purely contingent fee basis, shouldering the risks noted by the Texas Supreme Court in *Hoover Slovacek LLP*, as well as the exceptional results obtained, as factors in favor of an enhancement of the "lodestar" amount.  *See Jackson v. Host International, Inc.*, 426 Fed. Appx. 216, 226, 228 (5th Cir. 2011) (per curiam); *Edwards v. Aaron Rents, Inc.*, 482 F. Supp. 2d 803, 813 (W.D. Tex. 2006).

In addition to being time intensive, this case was also financially taxing to LPM. As mentioned previously, Wellogix did not have the ability to pay attorneys fees on an hourly basis, nor did it have the resources to pay reasonable and necessary litigation expenses as they came due during the pendency of this matter.  (*See* ¶10 of Exhibit 1)  As an example of the risk undertaken by Wellogix's counsel in this matter, Wellogix incurred more than $1.8 million just in litigation expenses in support of its trade secrets claims—all of which cost its counsel was required to pay.  (*Id*. ¶16)  The substantial commitment of time and labor expended on this matter, as well as the sheer magnitude of the out-of-pocket costs shouldered by Wellogix's counsel, made this case extremely difficult and financially *undesirable* to prosecute.

In circumstances involving complex commercial litigation, federal courts have found multipliers of up to 19.6 times the lodestar amount to be reasonable.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) (surveying multipliers found reasonable in common fund cases as ranging from 0.6 to 19.6).  Most often, courts apply a modifier in a range of between 5 and 7.  *See, e.g., In re Enron Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 752 (S.D. Tex. 2008) (multiplier more than 5); *DiGiacomo v. Plains All Am. Pipeline*, No. H-99-4137, 2001 U.S. Dist. LEXIS 25532, at *32 (S.D. Tex. Dec. 19, 2001) (holding 5.3 was acceptable multiplier "in light of the particular facts of this case" and noting that an appropriate multiplier can "far exceed" the typical range "from one to four."); *In re Diet Drugs*, 553 F. Supp. 2d 442, 486 (E.D. Pa. 2008) (survey of multipliers in recent "super-mega fund" cases ranged up to 4.45); *Steiner v. ABC, Inc.*, 248 Fed. App'x 780, 783 (9th Cir. 2007) (holding multiplier of 6.85 reasonable); *In re Cendant Corp. Prides Litig.*, 41 F.Supp.2d 537 (D.N.J. 1999), *vacated and remanded*, 243 F.3d 722 (3d Cir. 2001), *on remand*, No. 98-2819 (D.N.J. June 11, 2002) (approving percentage fee resulting in multiplier of 5.28); *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (approving "modest" multiplier of 4.65).[3]

---

[3]   *See also, e.g., Weiss v. Mercedes-Benz of North America, Inc.*, 899 F.Supp. 1297 (D.N.J. 1995), aff'd, 1995 U.S. App. LEXIS (3d Cir. 1995) (multiplier of 9.3); *Perera v. Chiron Corp.*, No. 95-20725-SW (N.D. Cal. 1999) (multiplier of 9.14); *Cosgrove v. Sullivan*, 759 F. Supp. 166 (S.D.N.Y. 1991) (multiplier of 8.84); *In re Buspirone Antitrust Litig*., No. 01-CV-7951, MDL Docket  No. 1413 (S.D.N.Y. 2003) (multiplier of 8.46); *Newman v. Carabiner Int'l Inc.*, No. 99 Civ. 2271 (S.D.N.Y. Oct 19, 2001) (multiplier of 7.7); *In re 3COM Corp. Sec. Litig.*, No. C-97-21083 (N.D. Cal. Mar. 9, 2001) (multiplier of 6.67); *In re Triangle Industries Sec. Litig.*, No. 10466, 1991 Del. Ch. LEXIS 203 (Del. Ch. Dec. 19, 1991) (multiplier of 6.6); *In re RJR Nabisco. Inc. Sec. Litig.*, MDL No. 818, 1992 U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992) (multiplier of 6.0); *Roberts v. Texaco*, 979 F. Supp. 185 (S.D.N.Y. 1997) (multiplier of 5.5); *Lemmer v. Golde Books*, No. 98 Civ. 5748 (S.D.N.Y. Oct. 12, 1999) (multiplier of 5.38); *Feerer v. Amoco Production Co.*, No. 95-0012, 1998 U.S. Distr. LEXIS 22248 (D.N.M. May 28, 1998) (multiplier of 4-5); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) (multiplier of 4.65); *Willson v. New York Life Ins. Co.*, No. 94-127804, 1995 N.Y. Misc. LEXIS 652 (N.Y. Sup. Ct. Nov. 8, 1995) (multiplier of 4.6); *In re Rite-Aid Corp. Sec. Litig.* ("Rite Aid I", 146 F. Supp. 2d 706 (E.D. Pa. 2001) (multiplier of "4.5 to 8.5"); *Rabin v. Concord Assets Group, Inc.*, No. 89 Civ. 6130, 1991 U.S. Distr. LEXIS 18273, [1991-92 Transfer Binder] Fed. Sec. L. Rep. ¶96,471 (S.D.N.Y. Dec. 19, 1991) (multiplier of 4.4); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109 (D.N.J. 2002)

A reasonable lodestar fee for the efforts of Wellogix's counsel on the matters in this case for which fees are recoverable would be $4,137,562.50 (calculated as 5,516.75 hours x $750 per hour as a reasonable hourly rate).  Applying an extremely modest multiplier similar to those used by the courts in the cases cited above—ranging between 5 and 7—results in an enhanced lodestar calculation of reasonable and necessary attorneys' fees totaling between $20,687,812.50 and $28,962,937.50.  A comparison of this range of typical lodestar amounts to the contingent fee award sought by Wellogix demonstrates that the award of a contingent fee in this case results in a fee award that is not only reasonable and necessary, but is also in an amount that is customary and fully in keeping with fees awarded using common lodestar calculations.

## IV.  CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Wellogix respectfully requests that this Court award it the reasonable and necessary attorneys' fees it incurred in this matter in the amount of $22,072,793.95, based on the factors discussed herein and set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) and *Arthur Andersen v. Perry Equipment Corporation*, 945 S.W.2d 812 (Tex. 1997).

Wellogix also requests all other relief to which it has shown itself justly entitled.

---

(multiplier of 4.3); *In re Rite-Aid Com Sec. Litig.* ("Rite Aid II"), 269 F. Supp. 2d 603 (B.D. Pa. 2003) (multiplier of 4.07); *In re WorldCom, Inc.. Sec. Litig.*, 388 F. Supp. 2d 319 (S.D.N.Y. 2005) (multiplier of 4.0); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998) (multiplier of 3.97).

Date: June 30, 2014.

Respectfully submitted,

*/s/ Randall C. Owens*

LAMINACK, PIRTLE & MARTINES, LLP
Richard N. Laminack
Attorney-In-Charge
State Bar No. 11850350
Thomas W. Pirtle
State Bar No. 16038610
Buffy K. Martines
State Bar No. 24030311
5020 Montrose Blvd., 9th Floor
Houston, Texas 77006
(713) 292-2750
(713) 292-2755 (fax)

WRIGHT & CLOSE, LLP
Thomas C. Wright
State Bar No. 22059400
Randall C. Owens
State Bar No. 15380700
R. Russell Hollenbeck
State Bar No. 00790901
One Riverway, Suite 2200
Houston, Texas 77056
(713) 572-4321
(713) 572-4320 (fax)

*Attorneys for Wellogix, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been filed pursuant to the electronic filing requirements of the United States District Court for the Southern District of Texas on June 30, 2014, which provides for service on counsel of record in accordance with the electronic filing protocols in place.

*/s/ Randall C. Owens*
Randall C. Owens